## OLDHAM *v.* LAFAYETTE COUNTY BOARD OF DRAINAGE COM'RS.

[97 So. 885. No. 23601.]

(Division B. Nov. 26, 1923.)

1. MANDAMUS. *Petition to require board of drainage district to pay certificates of indebtedness not demurrable for failure to allege existence of sufficient funds.*

    A petition for a writ of mandamus requiring a county board of drainage commissioners to pay certificates of indebtedness of a drainage district legally organized and in existence is not subject to demurrer because it fails to allege that the board has on hand sufficient funds to pay the certificates.

2. DRAINS. *Duty to provide for discharge of indebtedness of existing district either by issuance of bonds or levying of assessments.*

    Under chapter 197, Laws of 1912 (section 4333 et seq., Hemingway's Code), it is the duty of the county board of drainage commissioners of an organized district to provide for the issuance of bonds or the levying of assessments to pay the indebtedness of the drainage district incurred in its organization and take care of current indebtedness of the district.

APPEAL from circuit court of Lafayette county.

HON. T. C. KIMBROUGH, Special Judge.

Mandamus by L. E. Oldham against the Lafayette county board of drainage commissioners. Defendant's demurrer was sustained, and, from judgment for defendant, plaintiff appeals. Judgment reversed, and demurrer overruled, with leave to plead over.

*Lester G. Fant, W. G. Boyett, James Stone* and *Oldham, Stone & Stone,* for appellant.

The remedy sought by complainant cannot be denied because of the fact that two of the items of indebtedness sought to be collected were made by the Langston drainage district of Lafayette and Panola counties, and the Anderson drainage district of Lafayette and Marshall counties, respectively.

Section 48 of Chapter 197 of the Laws of 1912 provides: "In the event the lands of any drainage district organized as herein provided shall lie within two or more counties, the county board of drainage commissioners of all counties interested in which the lands shall lie, shall perform the duties herein required to be performed by the county board of drainage commissioners . . ."

Section 57 of this Act provides: "The provision of this Act applicable to organizing a drainage district, the lands of which shall lie in two or more counties, shall not apply to drainage districts containing less than ten thousand acres. In districts containing less than ten thousand acres that lie partly in two or more counties, the county board of drainage commissioners of the county having the largest number of acres shall do all things required by this Act to be done in the organization of said district, the same as if the district was wholly within their county."

The appellees, defendants below, cannot prevail because of any alleged lack of legal power to pay these certificates of indebtedness.

The requirements of a petition of mandamus, according to the decision of this court, are: 1. That the petition show a personal right on the part of the petitioner; 2. That it show a duty on the part of the defendant, by virtue of his public office, to perform the action demanded by the petition; 3. That the right of the petitioner is still unsatisfied, and that he has made demand upon the defendant to satisfy same; 4. That the petitioner has no other clear and adequate remedy; 5. That it show the nature of the relief sought; 6. That it be verified on oath.

With the exception of the point just argued above, there is no attack upon this petition except that the appellees, defendants below, have no power to do the thing which the petitioner seeks to require of them, that is to

levy, assess and collect taxes to pay these certificates of indebtedness.

This question is now *res adjudicata* and cannot be raised by the appellees in this proceeding. The petition shows that this matter has been adjudicated by the chancery court of Lafayette county, the court which created this county board and these several drainage districts. This is alleged in the petition and admitted by the demurrer.

Chapter 197 of the Laws of 1912, gives this board express power to do the very act which the petitioner seeks to have them required to do. "The county board of drainage commissioners are authorized and empowered to employ attorneys, engineers and other necessary employees for the purpose of assisting them or the district drainage commissioners in the organization of any drainage district, and they are authorized and empowered to pay a reasonable compensation to such employees out of the funds of the district arising from the issuance of the certificates of indebtedness, sales of bonds, or otherwise." The defendants, appellees, herein, have implied power under the law to levy, assess and collect taxes to pay these certificates of indebtedness.

It is passing strange that drainage districts organized under chapter 197 of the Laws of 1912, should have such vast and numerous powers and should be able to place thousands of dollars of indebtedness upon its inhabitants, and to charge the whole topography of the country and still be unable to levy a little tax to pay off their just debts evidenced by their own certificates of indebtedness and adjudged to be due by a solemn and final decree in the court which makes the existence of such a powerful corporation possible.

It is interesting to see how similar statutes have been construed by the highest courts of the land. In *Bates County, Missouri,* v. *Wills et al.* (1917), 239 Fed. 785, at page 789, the court says: "The legal inference is that

the grant of the power to make the contract also granted to it the power to levy, collect and pay over to the contractor the funds necessary to pay the agreed price of the labor and material the contractor furnished."

In the case of the *United States* v. *County of Clarke* 1877), 96 U. S. 211, on page 215, the court says: "Limitations upon a special fund provided to aid in the payment of a debt are in no sense restrictions of the liabilities of the debtor."

In the case of *United States* v. *New Orleans* (1878), 98 U. S. 381, at page 393, the court says: "When authority to borrow money or incur an obligation in order to execute a public work is conferred upon a municipal corporation, the power to levy a tax for its payment, or the discharge of the obligation accompanies it; and this, too without any special mention that such power is granted."

In the case of *Ralls County Court* v. *United States* 1881), 105 U. S. 733, at page 735, the court says: "It must be considered as settled in this court, that when authority is granted by the legislative branch of the government to a municipality, or a subdivision of a state, to contract an ordinary debt by the issue of negotiable securities, the power to levy taxes sufficient to meet, at maturity, the obligation to be incurred, is conclusively implied."

As to the policy of this court in such matters, we call the attention of the court to the case of *Jonestown* v. *Ganong* (1910), 97 Miss. 67, 52 So. 579. In this case, one of the main objections to the issuance of the writ of mandamus asked was that the town was unable to pay the judgment recovered because the assessed valuation of all property to taxation was not more than sufficient, when taxed to the utmost allowed, by law, to meet the current expenses of the municipality. At page 87, this court, speaking through Chief Justice Mayes, said: "We cannot accede to the contention that a municipality may defeat a judgment by consuming all its revenues for general municipal purposes for current expenses. When the state incorpo-

rates municipalities, and gives them the extensive and important powers which are found in their charters, giving to them the right to make contracts and vesting in them important powers of government, the faith of the state is pledged to individuals dealing with them that the state will afford a remedy to compel payment of their just debts."

Chapter 216 of the Laws of 1922, applies only to the payment of indebtedness at the dissolution of drainage districts heretofore created, and provides how the same may be dissolved, and provides how the indebtedness of the dissolved district shall be paid, and we submit has no application whatever to the case at bar. The claim that the board of drainage commissioners have no authority to levy taxes, this court has held in the case of *Kramer* v. *Standing Pine Drainage District,* 117 Miss. 387, that the board of supervisors were bound by the act of the drainage commissioners, and that they have no discretion.

The petition did not ask that the board of drainage commissioners levy the tax, but that they have it levied, and under the law as interpreted by our supreme court in the case above cited, *Kramer* v. *Standing Pine Drainage District,* this board, and this board only, had the power to have this tax levied.

What can a person who has a just, due and owing debt do with a board of drainage commissioners in order to collect his debt? If he brings suit he could not get a more binding judgment than the decree in the present case, rendered by the chancellor on the 11th day of August, 1921.

The chancery court had exercised every act of judgment in regard to the debt; they found it was a debt that the drainage district owed; that it was a debt that should be paid by the board of drainage commissioners of Lafayette county, thereby adjudicating every single question that could be raised about the justness of the indebtedness; the right of the holder of the indebtedness to collect it; the

ability and power of the board of drainage commissioners to pay it.

The case of *Kramer* v. *Standing Pine Drainage District,* has finally put an end to all questions about the right of board of drainage commissioners to have taxes levied, and that the board of supervisors have no discretion in the matter—that they must levy the tax.

*Harry M. Bryan,* for appellee.

Counsel desires to state to the court that it is not his purpose to ask for the denial of any right to appellant that he might have under the law. It is not my purpose as attorney for appellee board to aid in keeping from him that to which he may be entitled. However, it is apparent that there is a grave question presented here in the matter of appellee's authority. It is one that should be settled by this court in order that the members of the board may be protected from any aftermath which could affect them personally in event the lower court is held to have erred. The members of the drainage board of Lafayette county are responsible to the taxpayers of the various districts under its jurisdiction and I, for one, am loath to advise them to assume a taxing power not granted by statute.

It would be well at the outset for us to briefly review the statutes which shall control in the determination of the cause. As stated above, each of the districts upon which the certificates of indebtedness held by appellant were drawn exists by virtue of chapter 197 of the Laws of 1912.

Section 52 of the act (and under which the certificates of indebtedness herein were issued) provides that the county board is authorized to issue certificates of indebtedness "for the purpose of having the necessary surveys made and paying the other necessary expense and cost incurred in the preliminary examination of said district prior to the organization thereof.   .   .   .

"When the district is organized and the bonds are sold, the county board of drainage commissioners shall pay off said certificates of indebtedness out of the proceeds of any money belonging to the district from the sale of bonds or otherwise. . . .

"And in the event the said district is not organized after the indebtedness is incurred, the county board shall furnish the board of supervisors of the county or counties, in which the lands of the proposed drainage district are situated with the amount of such certificates of indebtedness, and the said board of supervisors shall levy an acreage tax or levy an *ad valorem* tax against the land in said proposed district to pay said certificates of indebtedness."

Does the petition on its face show a right to compel the county board of drainage commissioners of Lafayette county to levy a tax, or to furnish the board of supervisors with the amount of such certificates of indebtedness so that they shall "levy an acreage tax or levy an *ad valorem* tax against the land in said proposed district to pay said certificates of indebtedness?"

Taxing power is dangerous and it cannot be exercised except in pursuance of positive law. The rule is well expressed in 37 Cyc. 724, under the caption "E. Power of Legislature and Delegation of Power. —1. Taxation a Legislative Function." It is there said: "And no tax of any kind can be laid upon the citizen or his property save in pursuance of a positive law, nor in any other manner than in accordance with its provisions."

The holding of our own court in the case of *Monroe County* v. *Strong,* 78 Miss. 565, 29 So. 530, in which it was held, as applicable to boards of supervisors, that ". . . the statute . . . is at once the source and limitation of the board to impose taxes."

Likewise, it was held by this court in *Adams* v. *First National Bank of Greenwood,* 103 Miss. 744, 60 So. 770: "In the case of *Jefferson* v. *Grafton,* 74 Miss. 435, 21 So. 247, 36 L. R. A. 798, 60 Am. St. Rep. 516, in discussing

the exercise of powers by the board of supervisors, WHIT-FIELD, J., said: 'And the course of judicial decision in this state holds them to the strictest limitation of their powers.' And that learned judge cited and approved the following from 4 American and English Ency. Law, p. 375; 'Being creatures of statute, endowed with only special powers and created for special purposes they can exercise only such powers as are expressly conferred by statute.' "

Other citations of authority could be made here to show that that court has repeatedly held that the taxing power of municipalities, board, and commissions is circumscribed within strict statutory limits. To hold otherwise would produce disastrous results. Every jurisdictional element prescribed by statute must appear on the face of the record of bond-issuing bodies in order to sustain their validity.

In the case of *Kramer* v. *Standing Pine Drainage District,* 117 Miss. 587, 78 So. 5, it distinctly appears that the particular district was never organized, and, of course, because of that fact the decision is sound and follows the statute, section 52 of chapter 197 of the Laws of 1912. The language of the court, in the course of Judge STEVENS' opinion, is as follows: "Before the district was finally organized, many of the landowners concerned protested and petitioned against the formation of the district, and finally the project was abandoned altogether."

In that case it was, of course, the duty of the drainage board to certify the amount of the certificates therein involved to the board of supervisors for the levy of a tax to discharge them.

Appellee board would be in no doubt as to its power or authority if the facts in the instant case were identical with those of the Kramer case. But, as stated, in the case at bar certificates were drawn on organized districts whose bonds have been issued and sold.

The question naturally arises, what is the method then of discharging obligations such as are involved in the instant case when the districts have been organized, no bonds sold, and the projects abandoned? That is, abandoned at least to the extent of not issuing bonds or completing by contract or otherwise the drainage of their territories? We believe that the legislature has prescribed the only method, and that is chapter 216 of the Laws of 1922.

It is perfectly apparent that the learned special judge hearing this matter, keeping it under advisement for some time, reached the correct conclusion that the court coult not grant the prayer of petitioner for the reason that by doing so the board, appellee here, has no authority to do that which it was asked to do.

Under the decisions of our court we do not believe the cases cited by counsel for appellant apply. We have set out our citations as to the power of appellee board and those cases reviewed by counsel as being decided by the supreme court of the United States are at variance with them. The whole trend of our judicial decisions is in the direction of a strict construction of taxing power.

Argued orally by *Phil Stone* and *W. G. Boyette,* for appellant, and by *Harry M. Bryan,* for appellee.

SYKES, P. J., delivered the opinion of the court.

The appellant Oldham in his petition asks that the appellee board of drainage commissioners of Lafayette county be required to pay certain fees due appellant by appellee for services in connection with the organization of several drainage districts. The prayer of the petition is that it be required to pay this indebtedness or show cause why it should not be peremptorily ordered to levy a sufficient tax on this district to pay this indebtedness.

The material facts stated in the petition are as follows: That the appellee board some time in June, 1921, made certain allowances to appellant as attorney for services in

several drainage district matters. An appeal was prosecuted to the chancery court from this order, and the chancellor reduced these fees and ordered the clerk of the drainage board to issue warrants to cover. Pursuant to this order of the chancery court, certificates of indebtedness were issued to the attorney in each matter, due and payable in February, 1922, with six per cent. interest. These certificates recite that they were issued in pursuance of section 52, chapter 197, Laws of 1912. The petition alleges that these certificates are past due and unpaid; that he has made demand upon this board to pay same, but that it has declined and refused to pay.

A demurrer was interposed by the appellee board, sustained by the court, and judgment entered in favor of the appellee, from which judgment this appeal is prosecuted. There are a number of grounds of demurrer. It is unnecessary, however, to state them in detail. Before passing to the main question in the cause, it might be well to state that the appellee contends that some of the drainage districts for which allowances were made are in two or more counties, and therefore the circuit court of Lafayette county has no jurisdiction of these claims. A sufficient answer to that contention is that the chancery court of Lafayette county, has adjudicated that it had jurisdiction in all of these allowances and has adjudged that this board owed these fees to the appellant. The petition for mandamus before us does not show upon its face that the decree of the chancery court in allowing these fees was void for want of jurisdiction. There is therefore no merit in that contention.

The drainage districts in this controversy were organized under chapter 197, Laws of 1912 (section 4333 et seq., Hemingway's Code). This act provides a complete and independent method for the organization of drainage districts. The petition for mandamus shows that these districts were organized and are still in existence. At least the latter fact is not negatived, and we must assume that it be true.

The petition does not state that any bonds have been issued by these drainage districts nor that there are any funds in the hands of the appellee board out of which these debts can be paid.

It is the theory of the appellee that the petition is subject to demurrer for these two reasons: That section 52 of chapter 197, Laws of 1912 section 4386, Hemingway's Code), provides for these certificates of indebtedness to be issued before the formation of a drainage district, and further provides that if a district is not organized after the indebtedness is incurred the county board shall furnish to the board of supervisors the amount of such indebtedness, and the board of supervisors shall then levy an acreage tax to pay off this indebtedness, but that this act makes no provision for the paying off of an indebtedness of an existing drainage district, except that the county board of drainage commissioners shall pay off the indebtedness when the bonds are sold.

Section 4358, Hemingway's Code (section 25 of chapter 197, Laws of 1912), however, provides that at the time of the confirming of the assessments the county board of drainage commissioners may order these assessments to be paid in installments or may order the issuance of bonds for the total amount of such assessments, or may make the total amount of said assessments; or any part thereof, payable at a given date, and may issue the bonds for any balance. Under this section it is the duty of the county board of drainage commissioners to either issue bonds or provide for the payment of these assessments.

The scheme here provided, where a district is organized and is a going concern, is for the county board to provide for assessments to be made annually, or for a bond issue, or for both. In other words, it is the duty of the board of drainage commissioners to provide for the payment of the debts and expenses of the drainage district. Sections 22 to 24, inclusive, of this chapter (chapter 197, Laws of 1912; sections 4355 to 4357, Hemingway's Code),

provides how these assessments are made and when they become final. Section 4364, Hemingway's Code (section 30 of this act) specifies how the bonds are to be issued. From a careful examination of the whole act, and especially of those sections above referred to, it is the duty of the county drainage commissioners to provide for the satisfying of the indebtedness incurred in the organization of the district, either by the levying of proper assessments or the issuance of bonds.

It is not necessary for the petition in this case to allege that this board has on hand sufficient funds of these various districts to pay these claims. It is to be presumed that the appellee district has complied with its duty under this law. If for any reason it is not able to pay this indebtedness, this reason should be set up by way of defense. After a district has been organized, this board cannot supinely do nothing toward making assessments or issuing bonds. It is its duty to make provision for past indebtedness incurred as well as for the current expenses for the carrying on of the drainage district. The petition states a good cause of action. If the board be unable to pay this indebtedness, it devolves upon it to show that it has fully complied with the sections of the act above referred to, but has not on hand sufficient money to satisfy these claims.

Reversed; demurrer overruled, with leave to appellant to plead or answer within thirty days after the mandate of this court has been received in the office of the circuit clerk.

*Reversed; demurrer overruled.*